UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMION G. DAVIS,<br><br>        Plaintiff,<br><br>v.<br><br>OFFICER MILLER, et al.,<br><br>        Defendants. | CIVIL ACTION NO. 1:18-CV-02286<br><br>(JONES, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action arising under 42 U.S.C. § 1983, initiated upon the filing of the original Complaint in this matter by Plaintiff Damion G. Davis ("Davis") on November 29, 2018. (Doc. 1). Davis filed a subsequent Amended Complaint on April 3, 2020. (Doc. 28). In his Amended Complaint, Davis alleges that two Carlisle police officers "harassed [and] assaulted [him and] caused the death of his daughter" when they beat him on the steps of his home in Carlisle, Pennsylvania. (Doc. 28, at 1, 2). Davis asserts that the incident caused his wife great stress and trauma which resulted in the loss of their unborn daughter. (Doc. 28, at 3). Davis was incarcerated after the incident at the York County Prison and has since been released and now resides in Carlisle, Cumberland County, Pennsylvania. (Doc. 23, at 1). Davis brings his claim against Officer Kennedy, Officer Miller, and the Carlisle Police Department.[1] (Doc. 28, at 2). Defendants Kennedy and the Carlisle Police Department (hereinafter known collectively as "Defendants") have entered their appearances in this matter through counsel. (Doc. 36). Now pending before the Court is Defendants'

---

[1] Davis mentions a "defendant Officer Iller" in his amended complaint. The Court construes this to include Officer Miller, the defendant listed in his original complaint and the heading of this case.

Motion to Dismiss filed on July 17, 2020. (Doc. 40). The motion has been fully briefed and is ripe for disposition. (Doc. 41; Doc. 43).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On November 29, 2018, Davis initiated this action in the United States District Court for the Middle District of Pennsylvania. (Doc. 1). On March 13, 2019, this Court granted Plaintiff's two motions to proceed *in forma pauperis,* denied Plaintiff's motion to appoint counsel, and dismissed Plaintiff's complaint for failure to state a claim, but permitted Plaintiff to file an amended complaint within 30 days of the Order. (Doc. 14; Doc. 15; Doc. 16). On September 18, 2019, having not received a proper amended complaint, this Court ordered Plaintiff to file "one Amended Complaint" within 21 days of the Order.[2] (Doc. 24). Plaintiff filed his amended complaint on April 3, 2020, to which this Court responded with an order to show cause as to why dismissal of his three civil cases was not proper. (Doc. 28; Doc. 29). This Court vacated the show cause order upon further review of the nature of dismissal of Plaintiff's civil cases and filed Plaintiff's amended complaint. (Doc. 30; Doc. 32).[3] After waiver of service, the Defendants filed the pending Motion to Dismiss along with a brief in support on July 17, 2020. (Doc. 37; Doc. 38; Doc. 40; Doc. 41). In response, Plaintiff filed a brief in opposition, a third motion to appoint counsel, and two motions for a Rule26(f) conference.[4] (Doc. 43; Doc. 49; Doc. 50; Doc. 51).

---

[2] Additionally, this Court denied Plaintiff's second motion to appoint counsel in a separate order. (Doc. 25).

[3] Plaintiff's previous civil cases were dismissed without prejudice and therefore did not qualify as strikes under the Prison Litigation Reform Act. (Doc. 32, at 1).

[4] Because the Court has granted Plaintiff leave to amend his complaint the pleading stage is not yet finished, and a Rule 26(f) conference is premature. Therefore, it is recommended that Plaintiff's Motion for Discovery and Motion for Rule 26(f) be struck as moot. (Doc. 50; Doc. 51).

Davis's amended complaint alleges that Defendants harassed and assaulted him causing stress in his pregnant wife which resulted in the loss of Davis's daughter. (Doc. 28, at 1, 3). According to Davis's amended complaint, he was "[brutally assaulted and] harassed by the two Officers Mr. Kennedy and Mr. [Mi]ller in front of his home. . . . [which resulted in a] concussion." (Doc. 28, at 2). Davis alleges that the two officers followed him home and waited until Davis exited the building to attack him. (Doc. 28, at 3). Davis's wife learned of the assault and "ran home to find out why her husband was being attack[ed]." (Doc. 28, at 3). Due to "the trauma and stress" she endured from the attack, Davis's wife suffered from a placenta eruption which resulted in the passing of their child. (Doc. 28, at 3). Davis claims that his injuries were "a direct result of [r]acial [p]rofiling and a deliberate indifference to his character." (Doc. 28, at 3). Davis asserts that the Defendants should be held liable for "[n]egligence, stalking, harassment, [a]ssault, and the wrongful death of his [d]aughter" and "subject[ing him] to Cruel and Unusual Punishments." (Doc. 28, at 3).

The allegations outlined above give rise to Davis's suit under § 1983. (Doc. 28, at 1-4). For relief, Davis seeks compensatory and punitive damages in the amount of $800,000 against each Defendant, $1,000,000 in reparations for his family, a new trial, resignation of the Defendants, and counseling for himself and his family. (Doc. 28, at 7).

## II. DISCUSSION

Defendants filed the present motion to dismiss for failure to state a claim on July 17, 2020. (Doc. 40). In their brief in support, Defendants refute Plaintiff's claims on the grounds that they are "not legally viable . . . [and] not legally cognizable." (Doc. 41, at 7). Specifically, Defendants state that Plaintiff was "properly taken into custody without any violation of his

constitutional rights" and "[t]herefore, Plaintiff's Complaint fails to raise any legally cognizable claim under § 1983." (Doc. 41, at 7-8).

### A. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor

need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

B. FOURTH AMENDMENT EXCESSIVE FORCE

Liberally construing Plaintiff's *pro se* Complaint, the Court finds that Plaintiff has made a claim of a violation of his Fourth Amendment rights. (Doc. 28, at 3). Plaintiff states that he was deprived of his constitutional rights when the Defendants "caus[ed him] both [p]hysical and mental injuries." (Doc. 28, at 3). Defendants assert that the amount of force used in arresting Davis was "justified . . . [and] *de minimus*" and was therefore "constitutionally permissible."[5] (Doc. 41, at 18).

---

[5] Defendants use the facts of Davis's criminal conviction to imply that their use of force has been established as justified. (Doc. 40, at 9-10). However, the jury could have found a guilty verdict by determining that Davis "created a substantial risk of bodily injury." (Doc. 41-1, at 8). This finding is not mutually exclusive from a finding that police used excessive force, and the decision of this Court will not impact Davis's underlying criminal conviction for resisting arrest.

Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment. See *Graham v. Connor*, 490 U.S. 386 (1989). A law enforcement officer's use of excessive force in the course of an arrest or investigatory stop constitutes an unlawful "seizure" under the Fourth Amendment. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 583–84 (M.D. Pa. 2013); citing *Graham*, 490 U.S. at 394; *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir.2004). To determine whether specific conduct qualifies as excessive force, the court must examine its objective "reasonableness." *Broadwater*, 945 F.Supp. 2d at 583; citing *Graham*, 490 U.S. at 395–96. In making this determination:

> The court should consider the severity of the crime, the suspect's "immediate threat" to the safety of officers or others, resistance to arrest, attempts to flee, and access to weapons. *Graham, 490 U.S.* at 396, 109 S.Ct. 1865; *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir.2006). The court should also consider the duration of the law enforcement officer's use of force, whether the officer was attempting to effect an arrest, and the presence of accomplices. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997) (*abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir.2007)). The court must examine the use of force from "the perspective of a reasonable officer on the scene," without the benefit of hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.
>
> *Broadwater*, 945 F.Supp. 2d at 583.

In the instant case, Davis states that he was "harassed . . . [and] brutally assaulted" on the steps of his home for over 15 minutes by Defendants Kennedy and Miller. (Doc. 28, at 2). Davis claims that Defendant Miller slammed him against the wall, which led to a concussion.[6] (Doc. 34, at 2). Davis also states that after the assault, he was taken to the hospital by the Defendants and was "diagnose[d] with post concussion syndrome." (Doc. 28, at 2).

---

[6] Plaintiff states this fact in a supplement he submitted to the Court on May 28, 2020. (Doc. 34). Due to the fact that Plaintiff is *pro se* and in the interest of liberally construing the pleading, the Court will consider this supplement along with the amended complaint.

Davis satisfactorily states a claim of excessive force. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that is was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 299 (3d Cir. 1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). A seizure occurred when Davis was arrested on March 1st, 2017. (Doc. 41-2, at 2). *U.S. v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.") (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Davis pleads facts that assert the unreasonableness of this seizure when he states that he was "brutally assaulted." (Doc. 28, at 2). Davis was arrested for public intoxication and resisting arrest, both of which are not considered severe crimes. (Doc. 41-2, at 4); *see Castellani v. City of Atlantic City*, No. 13-5848, 2017 WL 3112820, at *8 (D. N.J. July 21, 2017) (stating that the level of severity for the crime of public intoxication is minimal); *Byrd v. Cumberland Cty. Doe Decision Makers 1-10*, No. 17-8064, 2020 WL 3496915, at *10 (D. N.J. June 29, 2020) (stating that resisting arrest is a crime of minimal severity). Davis does not provide facts regarding his resistance to arrest, attempts to flee, access to a weapon, or the presence of accomplices, but does state that he was "brutally assaulted" for more than 15 minutes and was slammed against a wall, leading to a later diagnosis of post-concussion syndrome. (Doc. 28, at 2; Doc. 34, at 2). Davis has pleaded facts sufficient to allege a claim of excessive force.[7] (Doc. 41-2, at 4); *see Broadwater*, 945 F.Supp. 2d at 583.

---

[7] Davis also alleges that "Defendant[s] subjected [him] to Cruel and Unusual Punishments" under both the United States Constitution and the Pennsylvania Constitution. (Doc. 28, at 3). Davis attempts to assert this claim regarding the conduct of the Defendants during his arrest and "prior to conviction." *See Cameron v. Johnson*, No. 05-5758, 2006 WL 1878329, at *2 (E.D. Pa. July 6, 2006). The Court interprets these claims as being properly

C. M<span style="font-variant:small-caps">onell</span> L<span style="font-variant:small-caps">iability</span>

Davis asserts a claim against the Borough of Carlisle Police Department ("Department") under the theory of *respondeat superior*.[8] (Doc. 28, at 4). Defendants state that Davis has failed to adequately plead a claim as required by *Monell v. New York Dept. of Soc. Services*, 463 U.S. 658 (1978).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481, F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *Monell* represents an exception to the general rule that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither

---

brought under a Fourth Amendment excessive force claim, not the Eighth Amendment. *See Stuckey v. Ross*, No. 4:CV-05-2354, 2005 WL 3629026, at *2-*3 (M.D. Pa. Dec. 15, 2005). Further, claims under the cruel and unusual punishment clause of the Pennsylvania Constitution are "coextensive with the Eighth . . . Amendment" and thus "provides no greater protections than that afforded under the Eighth Amendment to the United States Constitution." *Williams,* 2019 WL 1434670 at *6 (quoting *Jochen v. Horn*, 727 A.2d 645, 649 Pa. Commw. 1999). As Davis was not yet convicted of a crime at the time the alleged conduct occurred, it is recommended that his claims of cruel and unusual punishment under the United States Constitution and the Pennsylvania Constitution be dismissed. *See Cameron,* 2006 WL 1878329, at *2 (finding "that [the] plaintiff state[d] no cognizable claim under the Eight[h] Amendment because the events giving rise to th[e] suit occurred prior to conviction").

[8] Davis alleges liability "under the Doctrine of the respondent(s) Superior." (Doc. 28, at 4). The Court construes this as a spelling error with the intended theory to be *respondeat superior*. Additionally, Davis asserts this claim against "Defendant" in general, but it is clear from the nature of the claim that he intended to bring such a claim against the Department. (Doc. 28, at 4).

participated in nor approved." *Baraka*, 481 F.3d at 210 (citations and quotations omitted). Under *Monell*, a municipality – or a private corporation contracted by the municipality – may be held liable when the execution of a policy or custom of such municipality or corporation "inflicts the injury" for which the plaintiff seeks redress. *Monell,* 436 U.S. at 694; *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).[9]

      Davis fails to adequately plead that the Department implemented a specific policy or custom that led to the Defendant Officers' alleged use of excessive force. Davis states that the Department "cover[ed] up [the Defendant Officers' a]ssault, [h]arassment and the [w]rongful [d]eath of [Davis's d]aughter." (Doc. 28, at 4). Vague assertions and "conclusory allegations . . . [that] revea[l] no factual basis upon which they could be sustained" are insufficient to establish a policy or custom under *Monell*. See *Groman v. Twp of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Alleging a broad "cover up" is not a policy, custom, or practice sufficient to assert *Monell* liability. Davis has failed to demonstrate any "prior incidents from which we might reasonably infer" that the Department had a pattern of covering up the improper conduct of its officers. *See Ferguson v. Davy*, No. 4:17-CV-02136 201 WL 1009444, *4 (Jan. 11, 2019). Because Davis has not sufficiently alleged that Defendants "established a policy, practice, or custom that directly caused the harms that [Davis] allegedly endured," and has thus failed to state a *Monell* claim, the Court recommends that Davis's claim for

---

[9] To establish a 'policy,' a plaintiff must show that "a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d at 584 (internal quotation marks omitted) (brackets in original). To establish a 'custom,' a plaintiff must allege "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale*, 318 F.3d at 584 (internal quotation marks omitted).

"[n]egligence and [v]icarious [l]iability" be dismissed. *See Phillips*, 687 F. App'x at 131.[10]

### D. QUALIFIED IMMUNITY

Finally, Defendants aver that they are "entitled to qualified immunity as it was not clearly established at the time of the incident – or even at present – that the force used against Plaintiff to bring him into custody was constitutionally impermissible." (Doc. 41, at 18). Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). However, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). The key determination thus is whether "immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

---

[10] Additionally, Davis does not allege facts in support of his conclusory "cover-up" accusation, thus any personal involvement claim would fail. (Doc. 28, at 4).

Although Defendants point to facts within Davis's criminal trial for resisting arrest as evidence that their force was justified, "[i]n light of the factual scenario framed by the four corners of the complaint, the Court concludes that the [Defendants] may have known that [slamming Davis into the wall and causing him to suffer from a concussion] was unconstitutional." *Broadwater*, 945 F. Supp. 2d at 586. Davis does not indicate in his amended complaint that he "was either dangerous or likely to flee." See *Broadwater*, 945 F. Supp. 2d at 587. In light of the substantial line of authority, Plaintiff's allegations, and the Third Circuit's instruction that qualified immunity is generally not appropriate at the pleading stage, it is recommended that Defendants not be granted qualified immunity, without prejudice to Defendants raising this defense later in this case.

E. STATE LAW NEGLIGENCE CLAIM

Davis alleges a state law claim of negligence against the Defendants. (Doc. 28, at 2-4). Defendants contend that Davis's general assertion of negligence is duplicative of his excessive force claim, is "insufficient to impose liability under section 1983," and should be dismissed. (Doc. 41, at 24).

Where a District Court has preserved claims over which it has original jurisdiction, the Court may exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Whether a court exercises supplemental jurisdiction is within its own discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). A court's decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As the Court finds Davis adequately pled a federal claim, it is recommended that the Court retain supplemental jurisdiction of the state law claims that are inseparable from this action.

> Under Pennsylvania law:
>
> [n]egligence is established by proving the following four elements: '(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.
>
> *Estate of Swift by Swift v. Ne. Hosp.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. (1994)).

Davis alleges that Defendants had a "sworn duty to [p]rotect and [s]urvive and to act [a]ccordingly with the United States [p]rocedures under the Constitution and to [i]ncorporate [p]rofessionalism under any [c]ircumstances and [a] breac[h of] that duty is failing to uphold the oath that was taken by each Officer and their [o]rganization." (Doc. 28, at 4). Defendants state that Davis's negligence claim is improper because it is duplicative and "a claim of negligence alone is insufficient to impose liability under section 1983." (Doc 41, at 24). Davis has not alleged negligence alone under § 1983, as he has alleged a state law claim of negligence. (Doc. 28, at 4). Additionally, Davis's claims are not duplicative as they allege a failure "to uphold the oath that was taken by each [Defendant]" which is dissimilar to an excessive force claim. (Doc. 28, at 4).

However, Davis's claims do not meet the standard for pleading a negligence claim because his assertions are conclusory and vague. *See Iqbal*, 556 U.S. at 678. Davis states that the Defendants had a duty to "act [a]ccordingly with the United States . . . Constitution." (Doc. 28, at 4). Davis does not state with any degree of particularity what "duty or obligation" the Defendants were under nor whether that duty was breached. *See Estate of Swift*, 690 A.2d at 722. Alleging a "fail[ure] to uphold the oath" along with broad allegations of assault and harassment are not enough to allege a breach of a legally recognized duty. (Doc. 28, at 4); *see Liggon-Redding v. Virtua Voorhees*, 599 F.App'x 38, 39 (3d Cir. 2015) (affirming the District

Courts dismissal of Plaintiff's complaint because she "pleaded only conclusory assertions of . . . negligence"). Therefore, Davis has not adequately pleaded facts to assert a claim for negligence and the Court recommends dismissal of Plaintiff's negligence claim. *See Liggon-Redding*, 599 F.App'x at 39.

    F.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*, 293 F.3d 103, 108 (3d Cir. 2002). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). As the complaint in its current form does not set forth the proper factual allegations connected to Eighth Amendment, state law negligence, or supervisory legal claims, dismissal of these claims are warranted. However, out of an abundance of caution, and to preserve Plaintiff's rights as a *pro se* litigant, the Court will allow him to file a final second amended complaint as to his state law negligence claim and supervisory claim. The amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young*, 809 F. Supp. 1185 at 1198. The amended complaint must be "simple, concise, and direct" as required by Rule 8(d)(1) of the Federal Rules of Civil Procedure. Failure to file an amended complaint in accordance with the aforementioned requirements may result in the dismissal of this action in its entirety.

### III. CONCLUSION

Based on the foregoing, it is recommended that Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's claim of excessive force under the Fourth Amendment and be **GRANTED** as to Plaintiff's claims of cruel and unusual punishment as well as Plaintiff's negligence and supervisory claims. (Doc. 40). It is recommended that Plaintiff's claims of cruel and unusual punishment be **DISMISSED** with prejudice and that Plaintiff's supervisory and state law claims be **DISMISSED** with leave to amend the complaint within 30 days. It is also recommended that Plaintiff's Motion for Discovery and Motion for Rule 26(f) be **STRUCK** as moot. (Doc. 50; Doc. 51).

BY THE COURT:

**Dated: February 23, 2021**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAMION G. DAVIS,<br><br>    Plaintiff,<br><br> v.<br><br>OFFICER MILLER, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 1:18-CV-02286<br><br>(JONES, J.)<br>(MEHALCHICK, M.J.) |

**NOTICE**

 **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 23, 2021**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: February 23, 2021**             *s/ Karoline Mehalchick*
                             **KAROLINE MEHALCHICK**
                             **United States Magistrate Judge**